O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8523 AHM (RZx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | REGINALD JEROME TISDALE  v. CITY OF LOS ANGELES, et al. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| S. Eagle | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: | |

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

Plaintiff Reginald Jerome Tisdale has sued Defendants City of Los Angeles, Greyhound Lines, Inc. ("Greyhound"), and ten Does (including five Los Angeles Police Department ("LAPD") officers and five Greyhound security guards) for alleged injuries arising from his arrest at a Los Angeles Greyhound bus station and his subsequent detention in a City jail.  Greyhound has moved to strike three of the six claims against it, arguing that the claims arise from its privileged reports to law enforcement personnel and are precluded by California's anti-SLAPP statute and the federal *Noerr-Pennington* doctrine.  The Court DENIES the motion because the claims are based upon a citizen's arrest of Plaintiff, not on any privileged communications with the LAPD officers. Citizen's arrests are not privileged under the anti-SLAPP statute or the *Noerr-Pennington* doctrine.

## I.     PLAINTIFF'S ALLEGATIONS

Tisdale alleges that on or about Monday, January 8, 2007, he politely but repeatedly asked employees at the Los Angeles Greyhound bus station for assistance in changing his connecting bus destined for a consumer electronics convention.  In response, a security guard employed or contracted by Greyhound allegedly asked him to leave the station.  Tisdale then allegedly requested that Greyhound refund his ticket, only to be forced to the ground and handcuffed by five security guards.  As a result of the take-down, Tisdale's glasses were allegedly broken, as was an MP3 player he was holding in his hand.  Tisdale was then allegedly dragged into a holding office at the Greyhound station.  Greyhound's motion to strike is based primarily on Tisdale's allegations of what happened next:

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8523 AHM (RZx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | REGINALD JEROME TISDALE  v. CITY OF LOS ANGELES, et al. | | |

> Officers from the LAPD, DOES 1 through 5, arrived at the Greyhound Station in response to Mr. Tisdale's arrest.  An LAPD officer asked a Greyhound security guard with the surname Glover to complete the paperwork necessary to effect a citizen's arrest.  Glover completed the paperwork, falsely claiming, without basis, that Mr. Tisdale trespassed on Greyhound property.  LAPD officers took Mr. Tisdale into custody based solely on representations made by the Greyhound security guards and/or security guard supervisors, DOES 6 through 10.  LAPD officers never placed Mr. Tisdale under arrest, and relied on the citizen's arrest made by Greyhound security guards to take Mr. Tisdale into custody.  As the LAPD officers took Mr. Tisdale into custody, one of them told Mr. Tisdale, "You should have just left the bus station.  You'll be sorry you didn't . . . ."

First Amended Complaint ("FAC") ¶ 24.

Plaintiff alleges that he was then held for a number of days in a Los Angeles city jail, where he was prevented from taking critical HIV medications.  Plaintiff was released from custody on the evening of Thursday, January 11, 2007, and was never charged with a crime.

Plaintiff alleges claims against the City and its employees pursuant to 42 U.S.C. §§ 1983 and 12132, 29 U.S.C. § 794(a), and for negligence.  He alleges claims against Greyhound and the security officers for false imprisonment, battery, assault, negligence in executing the citizen's arrest, negligence in training the security guards, and conversion.  Greyhound now moves to strike the claim for false imprisonment and both claims for negligence.

## II.     THE CLAIMS ARE NOT BARRED BY CALIFORNIA'S ANTI-SLAPP STATUTE

Section 425.16 of the California Code of Civil Procedure provides that

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8523 AHM (RZx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | REGINALD JEROME TISDALE v. CITY OF LOS ANGELES, et al. | | |

established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. P. § 425.16. This provision is part of California's "anti-SLAPP" statute, which is meant to prevent "strategic lawsuits against public participation." "Under this statute, the party moving to strike a cause of action has the initial burden to show that the cause of action 'aris[es] from [an] act . . . in furtherance of the [moving party's] right of petition or free speech.'" *Zamos v. Stroud*, 32 Cal.4th 958, 965 (Cal. 2004) (citations omitted). For the reasons stated below, the Court finds that Greyhound has not met its initial burden.

Greyhound contends that Plaintiff's claims for negligence and false imprisonment — all related to the citizen's arrest — must be struck because they arise from allegations that after "[a]n LAPD officer asked a Greyhound security guard to complete paperwork necessary to effect a citizen's arrest," the guard "completed the [citizen's arrest] paperwork, falsely claiming, without basis, that Mr. Tisdale trespassed on Greyhound property. LAPD officers took Mr. Tisdale into custody based solely on representations made by the Greyhound security guards and/or security guard supervisors." Compl. ¶ 24. Greyhound bases its motion to strike on California courts' decisions that communications with law enforcement personnel relating to suspected criminal activity cannot not give rise to liability under the anti-SLAPP statute because they are absolutely privileged under the so-called California "litigation privilege," codified at California Civil Code section 47(b).[1] *See, e.g., Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (Cal. 2004) (applying section 47(b) to a report that a bank customer tried to cash an invalid check); *Chabak v. Monroy*, 154 Cal. App. 4th 1502, 1511-12 (2007) (applying the anti-SLAPP statute to reports of child abuse).

---

[1] Section 47(b) bars a civil action for damages for communications made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate]," with certain statutory exceptions that do not apply in this case. This is referred to as an "absolute" privilege because it bars all tort causes of action arising out of the specified communications except a claim for malicious prosecution. *See Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 360 (Cal. 2004).

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8523 AHM (RZx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | REGINALD JEROME TISDALE v. CITY OF LOS ANGELES, et al. | | |

As Plaintiff points out, however, Defendant's motion failed to cite a line of cases holding that a citizen's arrest is not considered privileged under the anti-SLAPP statute. *See Buchanan v. Maxfield Enters., Inc.*, 130 Cal. App. 4th 418 (Cal. Ct. App. 2005); *Kesmodel v. Rand*, 119 Cal. App. 4th 1128 (Cal. Ct. App. 2004); *Wang v. Hartunian*, 111 Cal. App. 4th 744 (Cal. Ct. App. 2003). This is because "the line between communication and conduct [is] crossed" when a citizen arrests an individual and causes police officers to take him into custody. *Wang*, 111 Cal. App. 4th at 751-52. This is true even when the arresting citizen first reports an alleged crime to the police, and then fills out a citizen's arrest form. For example, in *Wang* the defendant "called the police and reported the incident. The police inquired of [the defendant] whether he wished to make a citizen's arrest. He signed a Private Person's Arrest form, pursuant to which [plaintiff] was arrested and detained . . . ." *Id.* at 746. Under this line of cases, it is clear that the anti-SLAPP statute does not preclude Plaintiff's claims.

Greyhound attempted to resurrect its theory in its Reply brief, but its arguments are unpersuasive. Greyhound claims that this case is different from the *Wang* line of precedent because Tisdale's Complaint alleges that after the Greyhound security guards forced Tisdale to the ground, handcuffed him, and dragged him into a holding office, "[a]n LAPD officer [who arrived at the Greyhound station in response to Mr. Tisdale's arrest] *asked* a Greyhound security guard with the surname Glover to complete the paperwork necessary to effect a citizen's arrest." Compl. ¶ 24 (emphasis added). Greyhound somehow construes this allegation to "unambiguously state[] that the officers *directed* Greyhound's security guard to effectuate the citizen's arrest . . . ." Reply at 4 (emphasis added). This is significant, they argue, because in *Kesmodel, supra*, a California Court of Appeal suggested that if a police officer "requested, directed, or persuaded" a citizen to make a citizen's arrest, that citizen could not be held liable for any torts. *Kesmodel*, 119 Cal. App. 4th at 1140 (citing *Peterson v. Robison*, 43 Cal. 2d 690 (Cal. 1954)). But there is no allegation in this case that an officer "requested, directed, or persuaded" any of the security guards to make an arrest. Instead, the allegations, construed favorably to Plaintiff, *compare Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 269 n.3 (Cal. 2006) ("[we] accept as true the evidence favorable to the plaintiff . . . and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (citations omitted)), suggest that after Greyhound security officers had already handcuffed plaintiff and placed him in custody, the police officer merely *invited* Glover to complete the paperwork that would be

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8523 AHM (RZx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | REGINALD JEROME TISDALE  v. CITY OF LOS ANGELES, et al. | | |

necessary if Greyhound wanted to make a formal citizen's arrest. The anti-SLAPP statute and the "litigation privilege" do not immunize Greyhound from liability arising from this alleged conduct.[2]

## III. THE CLAIMS ARE NOT BARRED BY THE *NOERR-PENNINGTON* DOCTRINE

Greyhound next turns to the federal *Noerr-Pennington* doctrine, which provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citations omitted). But the *Noerr-Pennington* case that Greyhound relies upon, *Forro Precision, Inc. v. International Business Machines Corp.*, does not establish by its holding or its reasoning that the doctrine applies to a citizen's arrest. 673 F.2d 1045 (9th Cir. 1982). In *Forro*, IBM had approached the San Jose Police Department to allege that one of its competitors had stolen trade secrets. Subsequently, the police searched the competitor's premises and, at the police department's request for assistance, IBM aided in the search. *Id.* at 1054. The Ninth Circuit held that neither IBM's communication with the police nor its assistance with the search could be used to establish IBM's specific intent to engage in anticompetitive conduct because "it would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information. We therefore hold that the *Noerr-Pennington* doctrine applies to citizen communications with police." *Id.* at 1060.

But in this case, unlike in *Forro*, it is not Greyhound's communication with the

---

[2] In *Peterson*, the case upon which Greyhound relies most heavily and which is relied upon by *Kesmodel*, the California Supreme Court held that a citizen could not be liable if directed to make an arrest because "[i]t would be manifestly unfair to impose civil liability upon the private person for doing that which the law declares it a misdemeanor for him to refuse to do. (See Pen. Code, s 150 [misdemeanor for man over 18 to refuse officer's lawful request for aid in arrest] . . . .)" *Peterson*, 43 Cal. 2d at 697. In other words, the basis for the immunity identified in *Peterson* and *Kesmodel* has nothing to do with the anti-SLAPP statute's purpose of protecting an "act of [a] person in furtherance of the person's right of petition or free speech."

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8523 AHM (RZx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | REGINALD JEROME TISDALE v. CITY OF LOS ANGELES, et al. | | |

police that underlies the alleged wrongdoing. Tisdale is not seeking to impose liability on Greyhound because one of its agents made a telephone call to the police. Nor does Tisdale allege that Greyhound took actions at the behest of the police. Rather, the claims arise from an alleged citizen's arrest undertaken by Greyhound's security guards. As discussed above, this alleged citizen's arrest crosses the line from communication to conduct, and it is therefore not protected by the *Noerr-Pennington* doctrine.

## IV.    FEE SHIFTING IS NOT WARRANTED

Plaintiff submits that the Court should award him attorney's fees incurred in opposing the motion to strike because the motion is foreclosed by the *Wang* line of cases on citizen's arrests, and Greyhound failed to cite those cases. *See* Cal. Civ. Code § 425.16(c) ("If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."). Although Greyhound's motion is not meritorious, and it was obligated to cite the unfavorable decisions in *Wang* and elsewhere, the Court does not find that the motion was frivolous. Counsel for Greyhound should be more careful and display full candor in the future. Even if the citation omissions were not purposeful, such sloppiness by an attorney does nothing to further the client's interests.

## V.    CONCLUSION

For the above reasons, the Court DENIES Greyhound's motion to strike.[3]

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.

:

Initials of Preparer    se

---

[3] Docket No. 17.